### In re GRAND JURY PROCEEDINGS.

**UNITED STATES of America, Petitioner, Appellee,**

v.

**John DOE, Respondent, Appellant.**

**No. 91–1757.**

United States Court of Appeals, First Circuit.

Submitted Aug. 15, 1991.

Decided Aug. 29, 1991.

Daniel J. O'Connell, III, Boston, Mass., on brief, for appellant.

· Wayne A. Budd, U.S. Atty., Ernest S. Dinisco, Asst. U.S. Atty., and R. Bradford Bailey, Asst. U.S. Atty., Boston, Mass., on brief, for petitioner, appellee.

Before CAMPBELL, TORRUELLA and CYR, Circuit Judges.

PER CURIAM.

The appellant has appealed a district court order holding him in civil contempt for refusing to comply, without just cause, with a court order directing him to testify before a grand jury. 28 U.S.C. § 1826. We affirm.

Appellant was subpoenaed to appear and testify before a grand jury on June 12, 1991. Appellant appeared but invoked his Fifth Amendment privilege against self-incrimination and refused to answer questions. The government then applied to the district court for an order requiring appellant to testify and, further, providing appellant with use immunity for such testimony, pursuant to 18 U.S.C. §§ 6002 and 6003. On July 9, 1991, the district court issued that order of immunity compelling appellant's testimony.

The appellant was scheduled to appear again before the grand jury on July 10th. However, on that date, appellant complained of chest pains and his appearance before the grand jury was rescheduled for July 17th. On July 17th, despite the grant of immunity, appellant refused to answer questions, reading from a prepared statement, "I am unable to testify at the present time based upon the legal reasons, of which my attorney is aware, which constitutes duress and personal health problems from which I am suffering."

Appellant was asked what "legal reasons" he was relying on since, due to the order of immunity, he could no longer invoke his Fifth Amendment right. After conferring with counsel outside the grand jury room, appellant replied, "I am afraid of—for my family and myself if I answer any of these questions."

Appellant also provided the grand jury with a letter from his physician. That letter stated that appellant had been hospitalized in the past, most recently in March 1990, for coronary artery disease and that he also suffers from episodes of anxiety and depression. It listed appellant's current medications. It stated that appellant had been seen in the physician's office on July 15th for recurrent episodes of chest pain, anxiety and depression and that his physical examination revealed "stable cardiac status" and an "EKG showed nonspecific ST–T changes." The physician opined that considering appellant's past history and medical problems, appellant is not stable enough to withstand any stressful situations and that any undue physical or mental stress may prove to be extremely dangerous with life threatening consequences.

Appellant's appearance before the grand jury was terminated and the government then moved the district court for an order of contempt. A hearing on the petition for contempt was held on July 22nd. Appellant's counsel requested a copy of the transcript of appellant's appearance before the grand jury. The contempt hearing was then continued to July 30th and, in the meantime, the requested transcript was produced.

On July 30th, appellant's counsel submitted a second letter from appellant's physician. It essentially reiterated the contents of the prior letter and, further, stated, "Due to prior commitments and professional appointments, I am unable to appear in person. I hope this letter explains the medical circumstances." Counsel also informed the court that the physician would be available to testify at an evidentiary hearing, although counsel did not specify any date. Counsel requested such a hearing. At the same time, however, counsel stated that he believed that, "as a matter of record," the reasons for the appellant's "inability to testify" were set forth in sufficient detail in the grand jury transcript. The court declined to let either counsel

have your cake and eat it, too. You would like for me to rule on the sufficiency of what you place before me but reserving the opportunity to place more evidence before me if I rule against you. I cannot allow that to either side.

I have set this for hearing today. If either of you has any more evidence to be heard today, I will hear it now. Then I will be ready to hear your arguments on what I should do on the present record.

In the course of his argument to the court, appellant's counsel contended that appellant's statement regarding his fear of reprisal and his medical condition, supported by his physician's letters opining that appellant is not stable enough to withstand stressful situations, suffice as just cause to refuse to comply with the court's order to testify.

At the conclusion of the hearing, the court found the combination of fear of reprisal and medical condition insufficient as just cause for refusing to testify. Specifically, the court stated

> Now, I recognize that duress, fear of reprisal, may be a basis on which the Court should be sensitive to the interests of the protection of the witness, but in the present circumstances that is not a reason for holding back from the Order that the witness is in contempt because both the Government has made a proffer that it's willing to offer means of protection including sponsorship into the Witness Protection Program and the Defendant has expressed no willingness to have that done, no interest in having that done.
>
> As to the extent the health condition is one that creates risk whenever the Defendant is under stress, the source of risk on the evidence before me is primarily not the risk incident to giving the testimony itself, but the risks incident to the witness's concerns about reprisal, and that concern can be addressed by prospective measures, and that means that the fear has less force of weight in the Court's overall assessment about whether the Government has by clear and convincing evidence shown the conduct of the witness is confirmation.[1] For all those reasons, I find that this witness is in contempt.

Thereafter, appellant's counsel reiterated his request for an opportunity to present the testimony of appellant's physician. The court replied, "I have set this hearing with the notice that this was the time and place for the hearing, and that if you want to introduce evidence, now is the time. I think it is inappropriate for the Court to allow matters to be strung out, delayed, necessitating a delay in the proceeding." However, the court further stated, "I will not preclude you from submitting within 24 hours a proffer in writing of what the witness would say under oath if you wish to put it under oath to include the proffer [sic]." No such written proffer was tendered by the appellant.

The court denied appellant's request for bail pending appeal. We, in turn, denied a similar request. The appellant has been incarcerated since August 1, 1991. We now turn to his appeal on the merits.

The appellant concedes that he has the burden to show just cause for his failure to comply with the court's order. *In re Pantojas*, 628 F.2d 701, 703 (1st Cir.1980); *In re Bianchi*, 542 F.2d 98, 100–01 (1st Cir. 1976); *see also, In re Grand Jury Proceedings (Buckley)*, 860 F.2d 11, 13 (2d Cir. 1988). He contends, however, that it is just a burden of production. *See United States v. Handler*, 476 F.2d 709, 713 (2d Cir.1973) (The language of 28 U.S.C. § 1826(a) providing for confinement of a recalcitrant witness where the refusal to testify is without just cause shown "seems rather clearly to place on the witness the burden of coming forward with 'just cause' ").

In prior cases, we have not further delineated whether an alleged contemnor's burden to show just cause is a burden of production or persuasion. Nor have we described the standard of proof required for an ultimate finding of contempt. Other courts have determined that the government must prove contempt by clear and convincing evidence. *In re Weiss*, 703 F.2d 653, 662 (2d Cir.1983); *Matter of Battaglia*, 653 F.2d 419, 422–23 (9th Cir.1981).

The parties in this case agree to the following extent: The appellant did not comply with the court order directing him to testify. The government bears the ultimate burden of proving that the appellant was in contempt and the standard of proof is clear and convincing.

The district court accepted this as the appropriate framework and concluded that, even if it were to treat appellant's burden to show just cause as merely a burden of production, rather than persuasion, nonetheless, the government had proven contempt by clear and convincing evidence. Since there is no dispute as to the bearer of the ultimate burden and its standard of

---

1. Although the transcript reads "confirmation," "contumacious" is a more logical reading. There may have been an error in transcription. In any event, nothing turns on this point.

proof, and since we agree with the district court's final conclusion, we need not definitively resolve the scope of appellant's burden.

One of appellant's stated reasons, that he feared for himself and for his family, is not just cause for refusing to testify. *Piemonte v. United States*, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 1722 n. 2, 6 L.Ed.2d 1028 (1961); *In re Farrell*, 611 F.2d 923, 924 (1st Cir.1979); *see also, Matter of Grand Jury Investigation (Detroit Police Department Special Cash Fund)*, 922 F.2d 1266, 1272–73 (6th Cir.1991); *In re Grand Jury Proceedings (Lahey)*, 914 F.2d 1372 (9th Cir.1990); *Matter of Lowry*, 713 F.2d 616, 617 n. 1 (11th Cir.1983); *In re Grand Jury Proceedings (Burns)*, 652 F.2d 413 (5th Cir.1981); *In re Kilgo*, 484 F.2d 1215, 1221 (4th Cir.1973); *LaTona v. United States*, 449 F.2d 121 (8th Cir.1971); *cf. Matter of Grand Jury Proceedings of December, 1989 (Frelig II)*, 903 F.2d 1167, 1170 (7th Cir.1990) (duress, demonstrated by reference to palpable imminent danger, may in some circumstances serve as an equitable defense to incarceration for civil contempt, but fear, by itself, will not legally justify a refusal to testify). As the Ninth Circuit has said,

> Reflection shows that the rule must be such. Were it otherwise, any person involved with a criminal enterprise could point to the possible danger that comes from giving testimony. The more vicious or sophisticated the enterprise, the greater the danger. Thus, grand juries would be deprived of information when they most needed it.

*In re Grand Jury Proceedings (Lahey)*, 914 F.2d at 1375. Moreover in the present case, the government has offered to sponsor the appellant into the Witness Protection Program, which protection the appellant has rejected. "The witness may not frustrate the grand jury's access to the information on the basis that he will be put in danger by giving it, and, at the same time, reject an offer to remove or minimize the danger." *In re Grand Jury Proceedings (Gravel)*, 605 F.2d 750, 752–53 (5th Cir.1979).

Apparently aware of the alignment of authority against any argument that fear for personal and family safety justifies his failure to testify, appellant, although not abandoning this argument on appeal, argues that his medical condition, either by itself, or combined with his fear, suffices as just cause for refusing to testify. We need not decide whether health risks, attendant to the act of testifying, alone or in combination with fear of retaliation, if properly documented, could ever legally excuse one from complying with a court order to testify.[2] Even if, as appellant contends, he only has a burden of production to show just cause, in this case, the appellant failed to produce even minimal factual evidence on this issue. Appellant offered two letters from his physician, stating, in general terms, that appellant's health would be jeopardized by stress. Neither letter provided any opinion, supported by objective medical findings, directed specifically to the effect of testifying on appellant's medical condition.[3] Such failure of evidence clearly cannot overcome the fundamental guiding principle that a

---

**2.** We note, however, that the appellant appeared before the grand jury on July 17th for approximately 17 minutes, during which time he answered routine questions such as his name and whether he understood and discussed with his attorney his grant of immunity. Appellant has made no claim that appearance exacerbated any medical condition. This suggests that the health risk on which appellant bases his claim is not so much the stress from the physical act of testifying, itself, but the intertwined stress from answering other than benign questions, *and* the consequences which might result from that testimony.

Moreover, to the extent that the claim is directed at the health risks attendant to the mere act of testifying, even properly documented

health risks might not validly excuse an obligation to testify, if the government can take adequate protective measures to remove or minimize such risks, such as having appellant's physician available outside the grand jury room or having appellant provide sworn written answers to grand jury questions. *See Matter of Battaglia*, 653 F.2d at 420.

**3.** Appellant has included, in his brief on appeal, a third letter from his physician, dated 8 days *after* he was held in contempt, which appellant concedes is not part of the record since it was not submitted to the court below. Obviously, therefore, this letter can play no part in the consideration of the issue before this court, i.e., whether the district court correctly found the

grand jury is entitled to every person's testimony. *See United States v. Dionisio,* 410 U.S. 1, 9–10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973); *In re Lopreato,* 511 F.2d 1150, 1152 (1st Cir.1975); *see also, In re Inzirillo,* 542 F.2d 90, 91–92 (1st Cir. 1976) (court affirms finding of contempt and rejects claim that district judge should have ordered an independent physical examination to determine recalcitrant witness' fitness to testify based on letter from physician, presented for the first time at contempt hearing, stating that recalcitrant witness was vulnerable to the precipitation of angina or a heart attack if subjected to intimidation, harassment or other provocation).

Appellant's contention that the district court denied him a meaningful opportunity to establish his defense is specious, warranting comment only to point out our severe disapproval of an argument so lacking a basis in fact. Appellant was subpoenaed to testify before the grand jury on June 12th, at which time he claimed his Fifth Amendment right. The order of immunity compelling appellant's testimony issued on July 9th. Appellant's appearance before the grand jury on July 10th was excused and rescheduled for July 17th, at which time he refused to testify. The contempt hearing, held on July 22nd, was then continued, so to permit appellant to present written support for his request that he be given a copy of the grand jury transcript of July 17th, to enable him to be "fully prepared to defend himself," which transcript he subsequently received. At the continued hearing on July 30th, the district court accepted for consideration two letters from appellant's physician (unsworn, we add).

After finding appellant's proffer insufficient to excuse his failure to testify and holding him in contempt, the district court, nonetheless, gave appellant an additional 24 hours to submit a further written proffer of what his doctor would say under oath. The appellant filed nothing. In light of all of the above, appellant's claim that the district court erred in refusing to allow a continuance so as to present the testimony of his physician is, as we stated in our order of August 1, 1991, denying bail pending this appeal, "frivolous [and/or] taken for delay."

■ In sum, the appellant concedes that, although ordered to testify, he did not do so. We have concluded that, even assuming, as appellant contends, he only has the burden of production on the issue of just cause to excuse his refusal to testify, he failed to meet it. We review a district court's finding of contempt for abuse of discretion. *In re Grand Jury Proceedings (Lahey),* 914 F.2d at 1373; *In re Grand Jury Subpoenas (Anderson),* 906 F.2d 1485, 1488 (10th Cir.1990); *Matter of Grand Jury Proceedings of December, 1989 (Freligh II),* 903 F.2d at 1170; *In re Long Visitor,* 523 F.2d 443, 448 (8th Cir. 1975). There was no abuse of discretion in this case and we, therefore, affirm the judgment of the district court finding appellant in contempt.

*Affirmed.*

appellant in contempt on the basis of the evidence before *it.* And, we shall not consider it. *See In re Brogna,* 589 F.2d 24, 27 n. 3 (1st Cir.1978).

Appellant's citation to our opinion in *Grand Jury v. Gassiraro,* 918 F.2d 1013 (1st Cir.1990), in support of his request that we, nonetheless, consider this third letter, is unavailing. In *Gassiraro,* we took the "admittedly unusual" step in directing the government to file supplementary affidavits in this court because the government was not fully responsible for the arguable deficiencies in its initial response in the district court. *Id.* at 1016. Rather, "the district court deemed the government's response sufficient and terminated the hearing. Under such circumstances, we cannot fully fault the government for not insisting on the presentation of further evidence." *Id.* (footnote omitted). By contrast, in this case, appellant has attempted to submit to us, *unsolicited,* evidence in an instance where the district court deemed his evidence insufficient but, nonetheless, gave him an additional 24 hours to file a proffer of additional evidence, *see supra,* at 134, which appellant failed to do. Appellant is fully responsible for the status of the record before us.

Of course, appellant is not precluded from asking the district court to vacate its contempt order in light of further evidence. We intimate no opinion on the sufficiency of this latest letter vis-a-vis appellant's claim of just cause for refusing to testify.